# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **SUSAN SKRZECZ, An Individual** | * | |
| **539 Broadwater Way, Box 56** | | |
| **Gibson Island, Maryland 21056** | * | |
| | | |
| **Plaintiff** | * | |
| | | |
| **v.** | * | Case No.: 1:13-cv-01796-RDB |
| | | |
| **GIBSON ISLAND CORPORATION** | * | |
| **534 Broadwater Way** | | |
| **Gibson Island, Maryland 21056** | * | |
| | | |
| and | * | |
| | | |
| **RICHARD McMILLAN, Jr.** | * | |
| **President, Gibson Island Corporation** | | |
| **534 Broadwater Way** | * | |
| **Gibson Island, Maryland 21056** | | |
| | * | |
| **and** | | |
| | * | |
| **RICHARD DORIO, General Manager** | | |
| **Gibson Island Corporation** | * | |
| **534 Broadwater Way** | | |
| **Gibson Island, Maryland 21056** | * | |
| | | |
| **Defendant** | * | |
| | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Susan Skrzecz, ("Plaintiff" or "Skrzecz") by and through her undersigned Counsel, hereby brings this action against her employer, Defendant the Gibson Island Corporation (herein "Defendant" or "Gibson Island" or "Island") as well as its officers and shareholders responsible for hiring, firing, and for determining the wages, hours, and other terms and conditions of employment, for unpaid overtime wages due to her, damages for enduring the retaliation for obtaining legal counsel to file claims for such wages absent informal resolution, and damages for Defendants' actions constituting fraud, fraudulent concealment, and negligent misrepresentation.  She alleges as follows:

## INTRODUCTION

This case is brought by Susan Skrzecz (herein "Plaintiff" or "Skrzecz") who is currently employed as a police officer and emergency medical technician by the Police Department for the Island for unpaid wages for all hours worked over 40 hours per week as overtime wages due her for "call out" time due under the Fair Labor Standards Act ("FLSA") and the Maryland Wage and Hour Law and for treble damages and attorneys' fees for such unpaid wages under the Maryland Wage Payment and Collection Act. In addition, the suit alleges that following Skrzecz's complaints, she has been subjected to retaliation in the form of less preferential working conditions, discriminatory working conditions and wage practices, "stalking" and other acts to intimidate and to instill fear, unlawful interrogations regarding her claims and other intimidating conduct in an attempt to make the conditions so intolerable so as to force her to quit. The suit seeks damages for mental anguish, pain and suffering that are a direct result of the retaliation against her for having demanded payment of these wages under threat of legal action.

At the time Defendants hired Skrzecz, Defendants informed Skrzecz that she would be paid for the on-call hours she worked,  and that she was being offered rent-free housing on Gibson Island so that she could be available to offer EMT services to the Gibson Island residents. Defendants also told Skrzecz that she would be free to spend her days off in whatever way she desired. After Skrzecz relied on Defendants' representations by accepting the offer of employment, moving into the Gibson Island residence, and working on-call and overtime hours for Defendants, Defendants required Skrzecz to work significant on-call and overtime hours without paying her any additional  monetary compensation for those hours, placed significant restrictions on her on-call time as well as her days off, such that Skrzecz could not effectively use that time to engage in personal pursuits. The suit seeks damages for the financial losses, mental anguish, pain and suffering that Skrzecz incurred as a result of Defendants' representations and concealments.

## JURISDICTION

1.  Pursuant to 28 U.S.C. § 1331, 1343 (a)(4) and 1367(a), the Plaintiff seeks declaratory and injunctive relief for deprivations of her state and federal civil rights.

2.  This Court also has subject matter jurisdiction under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §203 *et seq*., and §216. Pursuant to 28 U.S.C. § 1367, the Court has subject matter jurisdiction over Plaintiff's state law claims under the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab & Empl., §3-401 *et seq*., the  Maryland Wage Payment and Collection Law, Md. Code Ann., Lab & Empl., §3-501 *et seq.*, and Plaintiff's common-law claims of fraud, fraudulent concealment, and negligent misrepresentation.

## VENUE

3.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because all of the events and omissions giving rise to Plaintiffs' claims occurred in the State of Maryland and the Plaintiff and Defendants all reside in this State.

**PARTIES**

4.  Plaintiff, Susan Skrzecz is, and at all pertinent times herein, has lived in the State of Maryland and has been employed as a police officer/emergency medical technician for the Gibson Island Corporation Police Department. (herein "Police Department").

5.  Defendant, Gibson Island Corporation is a stockholder owned Maryland Corporation who employs all persons working in the Police Department, Maintenance Department and all other departments that provide services to the homeowners and residents of the Island.

6.   Defendant, Richard McMillan is, and has been, at all pertinent times herein, President of the Gibson Island Corporation with authority to supervise and give orders to all Police Department Personnel including Chief Sperry and the General Manager.

7.  Defendant, Richard Dorio, is and has been General Manager of the Gibson Island Corporation for all pertinent periods of time herein.

8.  Chief Chris K. Sperry is, and at all pertinent times herein, has been Chief of the Police Department with full power to hire and fire officers and EMTs and to set all hourly wages, and other terms and conditions of employment for employees in the department subject to any restrictions set forth by either the President or Board of Governors.

9.  The Board of Governors conducts and manages the affairs and property of the island, except as otherwise provided by Statute, by the Charter, or by the Bylaws of the Corporation.

4

## FACTS COMMON TO ALL COUNTS

10.  Defendant Gibson Island Corporation is a Maryland Corporation whose major function is to act as administrator for the delivery of goods and services for Gibson Island residents including the administration of recreational and other services available to residents such as golfing, trash collection, maintenance of beach and recreational areas, the Gibson House, the Club Cottage, the Mountain Bar, the Clubhouse, as well as specific activities created to meet the needs of residents.

11.  The homeowners each pay approximately $425 or more a month in fees to the Corporation to provide garbage removal, 24 hour security through the private police department, and the care and maintenance of the common areas.

12.  The Gibson Island Police Department is a private police department whose employees are hired by the Chief of the Police Department subject to the restrictions set forth by the President and by the Board of Governors. The Corporation officers, the General Manager and the Chief of police all have input into the wages of police officers.

13.  The Gibson Island Corporation is owned by the stockholders, who consist of all of the homeowners on the Island. Each property owner has an opportunity to buy stock in the Corporation in the amount of 1 ½ shares of stock for each hundred dollars of the original sales price of the lot. Each shareholder must return the shares to the Corporation when their property is sold. Only stockholders are allowed to vote on Corporation business and stock is voted on the basis of the number of shares owned.

14. The residences on the Island generally range in value from $800,000 to over $4,000,000 with the median value of each house being about $2.8 million dollars.  Homeowners or shareholders elect officers for terms set forth in the Corporation's By-Laws to act as administrators of the Corporation.

15. The officers of the Corporation are elected by the Board of Governors each year at an annual stockholders meeting. These officers are the President, Vice President, Secretary, Assistant Secretary, Treasurer and Assistant Treasurer. The President is considered the Chief Executive Officer of Corporation and appoints the chair for each of the standing committees that help controls the operation of the Island. There is an executive committee that exercises all the powers of the board requisite for the conduct, management and development of the Corporation's business.

16.   As stated, there are standing committees related to the administration of the Island.   These committees are comprised of the homeowners on Gibson Island and include the architectural, capital reserves, conservation, deer, duck blind, employee benefits, finance, forestry, insurance oversight, master planning, pest control, SCBD, and strategic planning.

17.   While certain employees may receive housing for free, "resident employees" do not receive the same recreational privileges as do other residents of the Island.  Employees must use the Magothy River side beach as opposed to other beaches on the Island.  Their fishing is restricted to the Otter Pond from a boat or canoe. They cannot swim there, because it is a small beach with a little pier. They may skate on the pond in the winter. They cannot use the Boat House, gym, or club, nor can they participate in any family activities, such as parades, camp for kids, or lunch with Santa Claus. These are only examples as there are other rules that relate only to resident employees while permanent residents have few restrictions.

18. Richard McMillan, Jr. is presently and at all pertinent times alleged herein, has served as President of the Corporation.  He is an attorney who worked as a partner in Cromwell & Morning, a Washington D.C. law firm.  Richard Dorio is employed as the Corporation's General Manager responsible for the administration of the Island's day to day services and activities including but not

limited to the police department, post office, service and maintenance, boat works, golf course clubhouse and the pavilion.

19.  In order to assure that certain services be available to the Island's residents 24 hours a day, employees in a variety of the Corporation's departments are provided free housing in a residence on the Island contingent upon their continued employment by the Corporation.

20.  The Plaintiff was first hired to work on the Island in May 2010.   At the time of hire, Skrzecz was offered an hourly paid position as a police officer and emergency medical technician.   Because she was one of two EMTs, she also was offered free housing as an inducement to take the job because residents wanted the protection of having an EMT available on a 24 hour a day basis to residents.   At no time during her employment with Corporation did Plaintiff agreed to perform "on-call" work in return for housing. Free housing was provided to EMTs so as to allow them to immediately report to any emergencies. When Skrzecz was hired, Sergeant Tim Welsh, who initially interviewed Skrzecz, showed Skrzecz the house she would reside in. Sergeant Welsh told Skrzecz that she and Sergeant Welsh would split the on-call hours evenly.

21.  At the time she was hired, Skrzecz was aware only that she would be required to work on-call from 2am to 6am every other month. Skrzecz was never told that she would not be paid for these hours whether they were straight time or overtime hours, or that her "free housing" was in lieu of payment of wages for all these hours worked. Nor was Skrzecz told at the time she was hired that she had to work all the holidays, do traffic/parking detail on her days off, or cover the bank run if the Chief of Police was not working that day.

22.  Skrzecz was given no employment contract and was employed on an "at will" basis as she had no guarantee of employment for any specific period of time.   She was asked to sign the lease dated

7

April 8, 2011, which states in the opening paragraph, "*In accordance with your employment arrangement and this letter of agreement with Gibson Island Corporation, you will be permitted to occupy 415 Aberfoyle Rd., Gibson Island Maryland without payment of rent. The occupancy of this house is predicated upon your employment by the Corporation and your continued compliance with requirements of this letter.*" See April 8, 2011 Letter Agreement, attached as **Exhibit A.**

23.   The remainder of the lease agreement makes no reference to her employment and only deals with her responsibilities with regard to utilities, repairs, fixtures and other provisions typically found in residential leases. No mention is made in the lease of her position as an EMT or any requirement that she perform any "on call" services or other work as a condition of continuing to live in the residence rent-free.

24.   Some employees who work in other departments such as maintenance, the golf course or in the restaurant as well as some non-employees, also receive free housing. Those employees include Ralph Wroten in the maintenance department, Bobby Liebno, golf and maintenance, Bill Riel, golf maintenance supervisor, David Wolf, maintenance and service, Theodore Sanner, son of the harbor master, and Heather Herfel who works as the Club House manager. All of these employees receive free housing but perform no "on call" work or are required to be "on call."

25.   When Skrzecz was hired, she was informed by  Sgt. Welsh that she would be paid for her on- call time as  Chief Sperry would put a little extra in her check every week to cover these hours. Sometime thereafter, Skrzecz asked Chief Sperry about receiving pay for her on-call hours and was told that she "should shut her mouth" or she wouldn't have a job.  Chief Sperry also told Skrzecz that she was to never question how he does the schedule or her on-call ever again, and that if she did not like it,

maybe she should leave. The Chief also told her that if she didn't have a job, she wouldn't have a house, and Plaintiff was scared because she was a single mother.

26.   Plaintiff is aware that other employees who perform on-call work are paid for that time. Although the Plaintiff believed that her shift work was to be 6 days on followed by 6 days off, followed by 6 evenings on and 3 off, the Chief of Police often changed the schedule with little or no notice. Sometimes he scheduled Skrzecz to work on her regular days off without first asking her. Skrzecz would not find out about the schedule change until after it came out, which at times required her to re-schedule doctor's and other appointments because Chief Sperry scheduled her to work on a day Skrzecz was regularly off work.

27.   After Skrzecz moved in, Chief Sperry and Sergeant Welsh told Skrzecz that she was expected to remain on Gibson Island, even on her days off, so she could take the EMT calls. Sgt. Welsh also told Skrzecz that she was required to take her pager and radio in the bathroom when she showered. When Skrzecz was hired, however, Chief Sperry and Sergeant Welsh told Skrzecz that her days off were hers to do with as she pleased.

28.   After Skrzecz moved in, Chief Sperry told Skrzecz that she was also expected to work all the holidays, perform traffic detail, and that she must keep her pager on for medical calls and respond to them, even on her days off, because she was given a house. None of this was told to Skrzecz when she was hired.

29.   After Skrzecz moved in, Sergeant Welsh told Skrzecz that she had to work at least two straight months of on-call. When Skrzecz complained to Chief Sperry about having to work the two or three months of straight on-call, he told her she had to work all of that on-call time, because Sergeant Welsh wanted a break. He also told her that when she is on-call, she has to stay at home, she cannot

have a glass of wine, nor can she have company at her home.  None of this was told to Skrzecz when she was hired.

30.    In early Fall 2012, the Plaintiff began complaining that she was being sexually harassed by Sergeant Welsh, her superior.  She made complaints of outrageous conduct including stalking, hiding in her house, and other acts that were unwanted and unreasonable. These complaints fell on the deaf ears of the Chief, General Manager and the President.

31.    In or around May 2012, Skrzecz asked Chief Sperry if she could work as an EMT/police officer, but live off the island, so she would not encounter Sergeant Welsh. Skrzecz's house was located next door to Sergeant Welsh's house. Chief Sperry told her that she could not. Nor would Chief Sperry allow Skrzecz to trade houses with another employee. Chief Sperry told Skrzecz that if she did not live on  Gibson Island, she could not work there, and if she did not like it, perhaps it was time for her to go.

32.    Chief Sperry and Sergeant Welsh threatened to terminate Skrzecz on more than one occasion. Sergeant Welsh told Skrzecz that he terminated the EMT/police officer whom Skrezcz was hired to replace. He threatened her that if she did not keep quiet, he would terminate her as well. Chief Sperry also told Skrzecz that he likes to keep things quiet, that she needed to stop throwing Sergeant Welsh under the bus, and that if she did not like it, perhaps the job was not right for her.

33. It was not until Plaintiff obtained legal counsel that Gibson Island took any action with regard to her pleas for help. By letter dated October 15, 2012, counsel for Plaintiff wrote to the President of the Corporation advising him of the alleged sexual harassment and requesting that the Corporation take steps to curtail the unlawful conduct. Specifically, it stated that the Sergeant inappropriately touched officer Skrzecz on her chest on two separate occasions, using vulgar language and that he was lurking around outside her windows.  He referred to the Plaintiff in terms such as "stupid woman," "bitch," and

"damn fucking stupid girl," and "cunt."  Plaintiff did not file charges with the EEOC or any other agency preferring first to attempt to resolve the matter amicably.

34. The President and General Manager requested that Plaintiff's legal counsel allow Skrzecz to be interviewed regarding her allegations without his presence. He agreed to do so.

35. As result of the interview and the determination that the Plaintiff's allegations were both credible and accurate with respect to her claims of sexual harassment; the offending officer was terminated. It was hoped that such action would go far to ameliorate the situation.

36. At that time, Plaintiff's counsel also raised the issue of the Corporation's failure to pay Plaintiff for all overtime hours worked as "on-call" hours since the date she moved into the residence on Gibson Island. He also provided the facts and law to support this claim for payment of these hours worked.  Defendants absolutely refused to consider payment of these hours claiming that because Plaintiff receives free housing, she is not entitled to receive any further payment. This position was taken despite there being nothing in writing between the parties that would validate such an agreement. Plaintiff's counsel requested that if this position was being taken in good faith based upon reasonable information, that the Corporation provide any legal basis or precedent to Plaintiff's counsel relating to this refusal to pay overtime wages. The Corporation has provided no such evidence other than argument that Plaintiff's argument is without merit.

37. Since the middle of December 2012 and continuing to the present, Defendant through its agents, officers, and representatives has engaged in the pattern and practice of conduct designed to retaliate against the Plaintiff because of her demand for payment of overtime wages and to make conditions so intolerable that she would be forced to quit.

38.  By way of example, despite knowledge that Plaintiff is a single parent to 2 boys and that she generally celebrates Christmas with an open house on Christmas Eve, the Chief advised her that she would not be able to have her party because he was assigning her to 3 PM until 12 AM on Christmas Eve and then again from 2 AM to 8 AM and then again on Christmas Day at noon. Despite protestations that that would make it difficult to impossible to spend Christmas with her children, there was no change in the assignment. It was not until another police officer offered to cover Skzrecz's shift that Chief Sperry changed the schedule. However, he still required her to work significant on-call hours on December 25 and 26, thereby ruining her Christmas plans with her family because of all the restrictions on her on-call time.

39.  Since that time Chief has made an effort to lower hours on her shift schedule, referring to hours not on the schedule as "on call," resulting in weeks that she would have less than 40 regular hours, even though she worked 18 out of 24 hours a day either through scheduled or on call hours, and did not get paid for any of the on-call hours.

40.  From April 2011 through December 31, 2011, the Plaintiff worked a total of 188 nights or more than one half of the nights in a year, for a total of 1,128 hours of overtime. In 2012, things lessened a little bit with Plaintiff only being required to work 163 nights for a total of 978 hours without pay. Thus far in 2013, Plaintiff has worked somewhere in excess of 100 nights and 500 hours again without receiving payment for any of these hours, regardless of whether she was simply listening to her pager, the police radio, or performing CPR on a resident's chest.

41. Skrzecz, despite the Corporation's refusal to pay her, continued on in her job with her attorney still attempting to resolve this matter. As time has gone by, it has become clear that plaintiff was being retaliated against for having raised this issue. At one point the Chief screamed at her saying it

was all her fault for having raised this claim for wages and that the island would never pay her. The chief has attempted to make working conditions worse by scheduling her for all holidays and nights in retribution for having complained.  Because there are only 2 EMTs employed by Gibson Island, Plaintiff is scheduled regularly on call every day of every other month. Even on her days off, Szkrcez still has to be on-call a time or two every month.

42.   During the period from January 2013 to the present, Chief Sperry has told the Plaintiff that "all these problems are because you've raised this issue about your pay." He has advised her that the "on-call" stays the same and that if she doesn't like it the Plaintiff can leave as the Corporation is willing to go to court. He has told her, "all you are doing now is prolonging the matter." He has told her that she "is going to lose and that quote "maybe her attorney knows that he is just doing that to get paid more money to rack up this bill.""

43.   Since the Island constitutes the Plaintiff's place of work, she is required to remain on the employer's premises during her on call hours. Time spent on the island during these hours restricts the Plaintiff from effectively using the time for personal pursuits of any kind or nature.

44.   On one occasion, Skrzecz observed the chief sitting in his Jeep in the dark at around 6 AM outside of the building next to her house. When she went over to question him as to why he was there, he admitted that he was watching to find out if she was doing anything wrong. Skrzecz is also aware that on one occasion, Chief Sperry followed her when she went off the island to make a corporate bank run, even though he should have been covering her position on the island in her absence. Counsel for the Plaintiff complained about this conduct and characterized the Chief's actions as stalking and the President of the Corporation has attributed that statement to the Plaintiff.

45.   The President of the Corporation has been insisting that he has a right to question the Plaintiff regarding "her public statement that the chief was stalking her," as he knows the chief "would never do such a thing." Counsel for the Plaintiff has objected to the President's interrogating the Plaintiff outside the presence of counsel regarding either her claim for overtime or as to whether she made statements regarding the chief's stalking.

46.   The Corporation's legal counsel has indicated that the President has a right to meet with Plaintiff as it constitutes a work meeting. Plaintiff's counsel objected on the basis that the President has stepped outside his role as Chief Officer of the Corporation and is now acting as counsel for the Chief as he is demanding a retraction of the Plaintiff statement.

## Count One
## Violations of the Fair Labor Standards
## Act. 29 U.S.C. §203 & §216 ("FLSA")

47.   Paragraphs 10 through 46 are repeated and incorporated herein.

48.   During the period April 2011 through the present, Plaintiff has been required to work approximately 2500 or more hours of  "on-call" overtime in addition to the EMT and police work performed during these "on call" periods.

49.   The "on-call" time worked by the Plaintiff is compensable pursuant to DOL regulations. 20 C.F.R. §785.17, because Skrzecz is required to remain on the Defendants' premises (the Island) during all "on call" periods.  It should be noted that there are no stores or public restaurants on the island to which the plaintiff could go except in uniform on a work call.

50.    The Gibson Island Police/Security General Standard Guidelines, issued in February 1992 and revised in January 1996, provide that, "[t]here will be a *[sic]* Island Patrol Officer either physically on duty or available on call **AT ALL TIMES!!!**" *See* Gibson Island Police/Security General Standard

Guidelines, . Interestingly, after Plaintiff's counsel demanded payment for her overtime and on-call

hours, Chief Sperry issued a Memorandum on May 31, 2013, which contradicts the guidelines. Chief

Sperry stated that the purpose of the Memorandum "is to ensure that the existing expectations of resident

employee EMT/Police Officers are clear and shall remain in place with no misperceptions….There are

no restrictions to your activities while on call or the preceding hours of on call with the exception of

alcohol consumption." It is not physically possible for a resident police officer to be off the island and

be available on call at the same time. Thus, while on call, a resident police officer may not leave the

island, which is the employer's premises.

51. The requirement that Plaintiff cannot leave the Island, must be "promptly" available to

report in uniform to any call, is not allowed to have any visitors to her home during these periods

including her grandchildren or close friends, is not allowed to consume alcoholic beverages, must keep

her police radio on at all times that also broadcasts Anne Arundel County police and fire calls, must

report to any and all medical and police calls, which, in turn, necessitates that Plaintiff always has her

pager, cell, and house phones turned on at all times while she is on-call, are so restrictive that the

interfere with Plaintiff's ability to engage in personal pursuits. *See* 29 C.F.R.§553.221(d); 29 C.F.R. §

785.17. Plaintiff's uniform consists of a shirt and pants, or a jumpsuit, along with a duty belt. The duty

belt holds a gun, radio, handcuff, OC spray, and extra magazines.

52. In addition to being required to remain on the island at all times, Plaintiff was also required

to be in proper uniform within minutes of the call. As an EMT, Plaintiff is required to respond to all

calls "promptly" while being in uniform or an authorized Gibson Island Police Department jumpsuit.

Such jumpsuits are not to be worn while on the regular tours of duty. Some of these calls involve

medical treatment while some might be as innocuous as someone losing their home keys.

53.  Due to the restrictions placed upon the Plaintiff during her "on call" hours, such time is compensable and further is considered overtime as it is performed outside her normal 40 hour per week schedule.

WHEREFORE, Plaintiff is entitled to be compensated as overtime for all hours worked in "on call" status, is entitled to liquidated damages and further is entitled to her costs and reasonable attorneys' fees.

**Count II**
**Violations of the Maryland Wage & Hour Law**
**Md. Code Ann., Lab & Empl. §3-415**

54. Paragraphs 10 through 53 of the Complaint are repeated and re-alleged and incorporated herein.

55.  All work hours performed by Plaintiff in excess of 40 per week and hours worked in "on call" status are compensable as overtime at a rate of time and one-half.

WHEREFORE, Plaintiff is entitled to be compensated as overtime for all hours worked in "on call" status, is entitled to liquidated damages and further is entitled to her costs and reasonable attorneys' fees.

**Count III**
**Violations of the Maryland Wage Payment and Collection Law**
**Md. Code Ann., Lab & Empl. §3-501, *et seq.***

56.  Paragraphs 10 through 53 of the Complaint repeated and re-alleged and are incorporated herein.

57.   Defendants have failed and refused to pay Plaintiff for all hours worked for overtime and for "on call" hours worked every two-weeks or in the time required by Md. Code § 3-502, Labor and Emp. Article.

58.   Defendants' failure and refusal to pay such wages is not the result of a bona fide dispute.

59.   As such, Defendants' failure and refusal to pay such wages in a timely fashion violates the Maryland Wage Payment and Collection Law ("MWPCL") § 3-501 et seq. Labor & Emp. Article, Md. Code.

**WHEREFORE**, Plaintiff is entitled to be paid treble damages for all unpaid hours as well as costs and reasonable attorneys' fees.

**Count IV**
**Retaliation for Exercise of Rights under the FLSA,**
**29 U.S.C. §203 & §216 ("FLSA")**

60.   Paragraphs 10 through 53 are repeated and re-alleged and incorporated herein.

61.   During the time since her hire in 2010 until the present, Plaintiff has through her legal counsel, demanded that she be paid for all her overtime hours worked as well as for all "on call" hours.

62.   As a direct result and in retaliation for the demand for lawful payments required by the FLSA, Defendants have engaged in numerous acts of retaliation including, but not limited to, subjecting Plaintiff to working holidays, weekends and less preferable hours than other employees, threatening her on numerous occasions that if she persisted in her demands, she would lose her house and her job, demanding on numerous occasions that she be required to permit and allow Defendants to interrogate her over her complaints and regarding alleged retaliatory actions of the Chief telling Plaintiff that

regardless of her actions or complaints that Defendants would continue to require Skrzecz to work overtime and on call hours without compensation.

63.     In further retaliation for Plaintiff's complaints and demand for lawful payment under the FLSA for her on-call and overtime hours worked, Defendants have also refused to give Plaintiff holiday or vacation pay. Gibson Island Corporation's "New Employee Handbook" specifies that full-time employees such as Plaintiff accrue 1 week of vacation time after one year of service; two weeks after two years of service; and three weeks after five years of service. The "New Employee Handbook" further provides that salaried employees who do not work on a holiday are paid for the holiday at their regular rates. Salaried and hourly employees who work on a recognized holiday are paid at time and a half. *See* the "New Employee Handbook," **.** Defendants have not paid Skrzecz for her holiday or vacation pay, in violation of the "New Employee Handbook," and in retaliation for her FLSA complaints and demands.

64.   As a direct and proximate result of working all of these hours without pay and with being assigned far less preferable work assignments than other employees, Plaintiff began to exhibit significant signs of Posttraumatic Stress Syndrome. She notified her superiors who were aware that she started and has continued in therapy to help her deal with the constant unlawful treatment she is receiving.

65. Despite being aware of damage being caused to her by the unlawful retaliatory conduct, Defendants have refused to cease in desist in such conduct and have refused to pay any of the wages due and owing to Plaintiff.

**Wherefore,** Plaintiff hereby requests that Defendants be found jointly and severably liable for:

A)     Damages as a result of all pain and suffering as a result of Defendants' unlawful retaliation,

B)   Punitive damages and for costs and reasonable attorneys' fees.

## Count V
## Fraud-Intentional Misrepresentation

66.   Paragraphs 10 through 53 are repeated and re-alleged and incorporated herein.

67.   When Skrzecz was hired, Chief Sperry and Sergeant Welsh told Skrzecz that she would be able to live rent-free in a residence on Gibson Island. The offer of free housing was being made, they told her, so that the Gibson Island residents would have an EMT available to them on a 24-hour basis.

68.   When Plaintiff was hired, Chief Sperry told Skrzecz that she would be required to work on-call only from 2am to 6am every other month, and that on her days off, she was free to do what she pleased.

69.   When Skrzecz was hired, Sergeant Welsh told her that she and Sergeant Welsh would evenly split the on-call hours. Sergeant Welsh told Skrzecz that Chief Sperry would pay her extra for the on-call hours she worked.

70.   Shortly after Skrzecz moved in, she was required to work two to three straight months of on-call, was required to work substantially more on-call hours than from 2am to 6am every other month, did not receive (nor has she ever received) any extra pay for the on-call hours she has worked, was told by Chief Sperry and Sergeant Welsh that she could not leave Gibson Island on her days off, had to wear her pager and respond to medical calls at all times, even on her days off, could not have company at her home when she was on-call, and could not consume alcoholic beverages on her days off.

71.   As far back as 1996, Gibson Island has engaged in a pattern and practice of making false representations to the EMT/police officers they hire regarding the terms and conditions of their employment. At the time of being hired, the EMT/police officers have been told by Chief of Police

Ashton, Chief of Police Robert Hall, and/or Chief Sperry that they may live rent-free in a house on

Gibson Island, so that they are available to quickly respond to emergencies that occur on Gibson Island.

72.     From approximately 1996 to 2000, the resident police officers were given leases which

included a provision that as a condition of employment, they agreed to work on-call in case of

emergencies. None of the leases indicated that the work would be performed without pay.

73.     The letter agreement given to Plaintiff does not contain any provisions requiring her to

work on-call. Indeed, Plaintiff's letter agreement does not even contain the words "on call." Rather,

Plaintiff's letter agreement merely provides that, "[t]he occupancy of this house is predicated upon your

employment by the Corporation and your continued compliance with the requirements of this letter

agreement."

74.     The representations made by Chief Sperry and Sergeant Welsh to Skrzecz when she was

hired were false. At the time Defendants hired Skrzecz, they knew they were going to require her to

work on-call, and had no intention of paying her, claiming that it was a condition of her housing.

75.     Chief Sperry and Sergeant Welsh knew these representations were false, or made them

with a reckless indifference as to their truth.

76.     Chief Sperry and Sergeant Welsh made the false statements to Skrzecz with the purpose

of defrauding Skrzecz and getting her to accept the offer of employment and to perform on-call work

with no extra pay.

77.     Skrzecz relied on the representations made by Chief Sperry and Sergeant Welsh when

she agreed to accept the EMT/police officer position. Skrzecz had a right to rely on their representations.

Skrzecz had no information at the time she accepted the offer of employment that would have given her

a reason to disbelieve their representations.

20

78.     Skrzecz would not have accepted Gibson Island's offer of employment or moved her or her family's belongings into the residence on Gibson Island, but for Chief Sperry's and Sergeant Welsh's representations.

79.     Skrzecz has suffered financial, emotional, and mental harm as a result of Defendants' false representations.  Defendants' unlawful conduct caused Skrzecz to suffer from anxiety and depression over a period of several months, necessitating ongoing psychological therapy.

80.     Punitive damages are warranted, because dating as far back as 1996, Defendants have engaged in a practice of making fraudulent representations to their resident police officers regarding the terms and conditions of their employment. To this date, Defendants disdainfully continue to engage in this unlawful practice, thereby consciously disregarding the rights of Plaintiff and other resident police officers. Defendants acted with actual malice by knowingly making misrepresentations about the terms and conditions of Skrzecz's employment with the intent to deceive Skrzecz. Relying on these fraudulent representations, over the years Plaintiff and other resident police officers have accepted employment with Defendants, moved into a residence on Gibson Island, and worked significant on-call and overtime hours without receiving additional payment therefor, all the while being told after they took these actions, "that's what they get the house for."

**Wherefore,** Plaintiff hereby requests that Defendants be found jointly and severably liable for:

A)     Damages for Skrzecz's financial losses sustained as a result of not being paid for her on-call or overtime hours worked;

B)     Damages for all Skrzecz's emotional and mental pain and suffering as a result of Defendants' unlawful false representations;

C)     Punitive damages in the amount of $10 million; and

D)      Plaintiff's reasonable costs.

**Count VI**
**Fraudulent Concealment**

81.      Paragraphs 10 through 53 and 67 through 80 are repeated and re-alleged and incorporated herein.

82.      At the time Skrzecz was hired, Chief Sperry and Sergeant Welsh told Skrzecz that she was being offered a house to live in on Gibson Island that would be rent-free, so that she could be available to work on-call as an EMT/police officer on Gibson Island. Sergeant Welsh told Skzrecz that she would be paid extra for the on-call hours worked.

83.      At the time Skrzecz was hired, neither Chief Sperry nor Sergeant Welsh told Skrzecz that she would be expected to work a significant number of on-call hours, that she would not receive any extra monetary compensation for the on-call hours she worked, that the free housing she received on Gibson Island was intended to be her compensation for the on-call hours she worked, that she would not be free to leave the island the days she worked on-call, or that she was expected to wear her pager and respond to medical calls, even on her days off.

84.      The representations made to Skrzecz by Chief Sperry and Sergeant Welsh were partial and fragmentary disclosures that misled Skrzecz because of their incompleteness.

85.      The partial and fragmentary disclosures made to Skrzecz by Chief Sperry and Sergeant Welsh created a duty by them to disclose the additional information necessary to prevent their representations from misleading Skrzecz.

86.      Chief Sperry and Sergeant Welsh failed to disclose the additional material facts to Skrzecz.

87.     Chief Sperry and Sergeant Welsh intended to defraud or deceive Skrzecz so that she would accept their offer of employment, move into the residence on Gibson Island, and work the on-call and overtime hours without receiving additional monetary compensation for those extra hours worked.

88.     Skrzecz justifiably relied on Defendants' concealment when she accepted the offer of employment, moved into the residence on Gibson Island, and began working the on-call and overtime hours that Defendants required her to work, all without receiving extra pay for those hours. At the time Skrzecz took these actions, she had no reason to believe or know that Defendants were concealing material information from her.

89.     Skrzecz has suffered financial, emotional, and mental harm as a result of Defendants' fraudulent concealment. Defendants' unlawful conduct caused Skrzecz to suffer from anxiety and depression over a period of several months, necessitating ongoing psychological therapy.

90.     From at least 1996 through the present, Defendants did not tell the resident police officers until after they accepted the offer of employment, moved into the house and began working that they were expected to work on-call without receiving additional compensation, had to be available to work on their days off, and the housing they received was their compensation for this additional on-call time worked. The repeated refrain from Chief Ashton, Chief Hall and/or Chief Sperry to those EMT/police officers who complained to them about this practice was, "That's what you get the house for."

91.     Punitive damages are warranted, because dating as far back as 1996, Defendants have engaged in a practice of fraudulently concealing material facts to their resident police officers. These material facts consist of the Defendants' not paying the resident police officers for the on-call or overtime hours they work, and expecting them to accept the house they are required to live in on Gibson Island as compensation for the on-call and overtime hours worked, even though the resident police

officers never agreed to do so when they accepted Defendants' offer of employment. To this date, Defendants disdainfully continue to engage in this unlawful practice, thereby consciously disregarding the rights of Plaintiff and other resident police officers. Defendants acted with actual malice by knowingly concealing material facts about the terms and conditions of Skrzecz's employment with the intent to deceive Skrzecz. Not being aware of these fraudulent concealments, over the years Plaintiff and other resident police officers have accepted employment with Defendants, moved into a residence on Gibson Island, and worked significant on-call and overtime hours without receiving additional payment therefor, all the while being told after they undertook these actions, "that's what they get the house for."

**Wherefore,** Plaintiff hereby requests that Defendants be found jointly and severably liable for:

A)      Damages for all Skrzecz's emotional and mental pain and suffering as a result of Defendants' fraudulent concealment;

B)      Punitive damages in the amount of $10 million; and

C)      Plaintiff's reasonable costs.

### Count VIII
### Negligent Misrepresentation and Implied Negligent Misrepresentation

92.      Paragraphs 10-53 are repeated, re-alleged, and incorporated herein.

93.      Prior to Skrzecz being hired by Gibson Island, she was interviewed by both Sergeant Welsh and Chief Sperry. When Sergeant Welsh was showing Skrzecz the house on Gibson Island she would live in, he specifically told Skrzecz that Chief Sperry would pay her extra monetary compensation for the on-call hours she would work.

94.      Chief Sperry and Sergeant Welsh told Skrzecz that she would be permitted to live in the house rent-free, so that she would be able to provide emergency EMT services to Gibson Island residents.

24

95.     The communications between Skrzecz and Chief Sperry and Sergeant Welsh pertained to employment negotiations that involved Skrzecz's pecuniary interest. As such, Defendants owed a duty to Skrzecz.

96.     Sergeant Welsh negligently asserted a false statement of material fact to Skrzecz when he told her that she would be paid for the on-call hours she worked.

97.     Chief Sperry and Sergeant Welsh negligently asserted a false statement of material fact to Skrzecz when they told her that the reason she was being offered the house rent-free was so that she would be available to provide emergency EMT services to Gibson Island residents.

98.     By making the statements regarding payment for the on-call hours while showing Skrzecz the house she would reside in, Sergeant Welsh intended that his statement would be acted upon by Skrzecz.

99.     By making the statements to Skrzecz that she was being allowed to live in the Gibson Island residence rent-free so that she could provide emergency EMT services to the Gibson Island residents, Chief Sperry and Sergeant Welsh intended that their statements would be acted upon by Skrzecz.

100.    Making these statements in the context of negotiating the terms of employment with Skrzecz, Defendants had knowledge that Skrzecz would probably rely on their statements, which, if erroneous, would cause injury to Skrzecz.

101.    Not having any reason to disbelieve Defendants, Skrzecz justifiably relied on Defendants' statements.

102.    Defendants affirmatively represented only a fragment of the entire picture of the terms and conditions of Skrzecz's employment when they failed to inform her of the substantial on-call hours

she was expected to work, the significant restrictions on her on-call and off-duty time, and that she would not be paid any extra monetary compensation for her on-call or overtime hours.

103.    In the context of employment negotiations with Skrzecz, Defendants had a duty to speak. In failing to do so, Defendants also impliedly negligently misrepresented facts to Skrzecz.

104.    Skrzecz has suffered financial, emotional, and mental harm as a result of Defendants' negligent misrepresentations and implied negligent misrepresentations.

**Wherefore,** Plaintiff hereby requests that Defendants be found jointly and severably liable for:

A)    Damages for Skrzecz's financial losses sustained as a result of Defendants' negligent misrepresentations and implied negligent misrepresentations that she would be paid for her on-call or overtime hours worked, and that she was being allowed to live in the Gibson Island residence rent-free so that she would be available to provide emergency EMT services to Gibson Island residents;

B)    Damages for all Skrzecz's emotional and mental pain and suffering as a result of Defendants' negligent misrepresentations and implied negligent misrepresentations;

C)    Plaintiff's reasonable costs; and

D)    Such other and further relief that this Court deems just and property.

**Demand for a Jury Trial**

Plaintiff demand a trial by jury on all claims so triable.


Respectfully submitted,

/s/_____
John M. Singleton, Bar No:  02275
THE SINGLETON LAW GROUP
1447 York Road, Suite 508
Lutherville, Maryland  21093
410-902-0073  Fax: 410-902-7372
Attorney for Plaintiff

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on December 23, 2013, a copy of the above was filed electronically with the

U.S. District Court, and, pursuant to L.R. 102.1.c, the Court's notice of electronic filing constitutes a

certificate of service on all other counsel in this action.

/s/ John M. Singleton
John M. Singleton, Bar No. 02275
THE SINGLETON LAW GROUP
1447 York Road, Suite 508
Lutherville, Maryland 21093
Office: 410-902-0073
Facsimile: 410-902-7273
Email: jsingleton@singleton-law.com
*Attorney for Plaintiff*